IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WESLEY THOMAS GALLOP, JR.,

        Petitioner,

   v.                          CIVIL ACTION NO.  2:16cv695

HAROLD W. CLARKE, Director,
Virginia Department of Corrections,

        Respondent.

## REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Wesley Thomas Gallop, Jr.'s ("Petitioner") *pro se* Petition for a Writ of Habeas Corpus ("the Petition") filed pursuant to 28 U.S.C. § 2254, ECF No. 1, and Respondent Harold W. Clarke's ("the Respondent") Motion to Dismiss, ECF No. 14.  The matter was referred for a recommended disposition to the undersigned United States Magistrate Judge ("undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges.  The undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J).  For the following reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 14, be **GRANTED,** and the Petition, ECF No. 1, and Amended Petition, ECF No. 7, be **DENIED** and **DISMISSED WITH PREJUDICE.**

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On March 26, 2011, first responders from the Norfolk Fire Department and Norfolk Police department responded to a house located on East Virginia Beach Boulevard in Norfolk, Virginia. ECF No. 15, attach. 3 at 3. Upon arrival, the first responders encountered the victim, Anthony McKinney ("the victim") lying in the driveway area of the house, suffering from multiple gunshot wounds. ECF No. 15, attach. 3 at 3. The victim had no pulse and was transported to Sentara Norfolk General Hospital where he was declared dead. An autopsy revealed that the victim expired due to four gunshot wounds, and at least three of which would have proven fatal. ECF No. 15, attach. 3 at 3-4. On or about March 22, 2012, Petitioner was arrested and held in Norfolk City Jail. ECF No. 15, attach. 12 ("Respondent's Exhibit L") at 1, ¶ 1. Shortly thereafter, B. Thomas Reed, Esq. ("Trial Counsel") was appointed to represent Petitioner. ECF No. 15, attach. 12 ("Respondent's Exhibit L") at 1, ¶ 1. On June 6, 2012, Petitioner was indicted on one count of first degree murder, one count of second degree murder, and two counts of use of a firearm in the commission of a felony. ECF No. 15, attach. 3 at 2. Prior to trial, the Commonwealth *nolle prossed* the second degree murder count and one count of use of a firearm. ECF No. 15, attach. 2 ("Respondent's Exhibit B") at 5. Beginning on February 28, 2013, Petitioner was tried before a jury in Norfolk Circuit Court. ECF No. 15, attach. 3 at 2.

At trial, the evidence showed that on the evening of March 25, 2011, Petitioner, his girlfriend, Quinshala Frost ("Frost"), Petitioner's friend, Deandre Moore ("Moore"), and Moore's girlfriend, Dana Brown ("Brown") made plans to go out drinking and show off Petitioner's new Cadillac Escalade. ECF No. 15, attach. 3 at 4.[1] Upon attempting to enter a club, Petitioner and Moore were turned away so the group decided to go to a "selling party" at a

---

[1] All four individuals testified at trial, and Petitioner did so against the advice of his counsel, placing himself directly at the location and time of the murder. ECF No. 15, attach. 3 at 20.

house.  A security guard working the front door of the party frisked Petitioner and denied him entry after finding a gun on Petitioner's person.  ECF No. 15, attach. 3 at 5.  Ultimately, Petitioner put the gun back into the Escalade and was permitted to enter the party.  Sometime later, the victim went outside to talk to a friend and while standing on the curb, lost his balance and fell into Petitioner's Escalade.  ECF No. 15, attach. 3 at 6.  An argument between the victim, Moore, Frost, and Brown ensued about the victim bumping into the Escalade.  Brown watched Petitioner remove something from underneath the front passenger seat, and began shooting the victim in the chest from less than five feet away.  ECF No. 15, attach. 3 at 6-7.  Petitioner, Frost, Moore, and Brown then jumped into the Escalade and sped away from the party, while Brown heard Petitioner saying "I shot him. I shot him."  ECF No. 15, attach. 3 at 7.  At the close of the Commonwealth's evidence (which included the testimony of sixteen (16) witnesses, including the eyewitness testimony of the selling party security guard, the victim's friend, Moore, Frost, and Brown, Petitioner moved to strike the evidence, which was denied by the trial court, and denied when Petitioner moved again at the close of all the evidence.  ECF No. 15, attach. 3 at 2, 12-13.  The jury found Petitioner guilty of second degree murder, in violation of Virginia Code § 18.2-32, and use of firearm in commission of a felony, in violation of Virginia Code § 18.2-53.1, and recommended that Petitioner be sentenced to thirty-eight (38) years of incarceration.  ECF No. 1 at 15.  On October 10, 2013, via a post-trial motion, Petitioner filed for the first time, a motion for a mistrial.  Following a full evidentiary hearing on October 18, 2013, the trial court denied the same and imposed the verdict and sentenced Petitioner in accordance with the jury's recommendation.  ECF No. 15, attach. 3 at 2.  Accordingly, Petitioner is detained pursuant to a final judgment of the Norfolk Circuit Court entered on November 26, 2013.  ECF No. 15 at 1, ¶ 1.

3

Petitioner appealed his conviction to the Court of Appeals of Virginia on the grounds that the evidence was insufficient to support his conviction for second degree murder and that the trial court erred when it denied his request for a mistrial based on the Commonwealth's alleged failure to investigate the identity of an alleged eye-witness.   ECF No. 15 at 1-2 (citing ECF No. 15, attach. 1 ("Respondent's Exhibit A")).  In a *per curiam* opinion dated August 15, 2013, the Court of Appeals denied Petitioner's appeal. ECF No. 15, attach. 1.  By Order dated January 23, 2015, the Supreme Court of Virginia refused to entertain Petitioner's further appellate endeavors. ECF No. 15, attach. 4 ("Respondent's Exhibit D").

On September 17, 2015, Petitioner filed a petition for a writ of habeas corpus in the Norfolk Circuit Court, which the Norfolk Circuit Court dismissed on December 17, 2015. *See* ECF No. 15, attach. 5 ("Respondent's Exhibit E")); ECF No. 15, attach. 6 ("Respondent's Exhibit F").  Petitioner attempted to appeal the Norfolk Circuit Court's decision, which was refused by the Supreme Court of Virginia on August 3, 2016.   ECF No. 15, attach. 7 ("Respondent's Exhibit G"); ECF No. 15, attach. 8 ("Respondent's Exhibit H").  On February 25 2016, Petitioner filed a Motion to Vacate in the Norfolk Circuit Court, alleging an invalid indictment, which was denied on March 8, 2016, and the Virginia Supreme Court refused an appeal of this decision.  On January 10, 2017. *See* ECF No. 15 at 2 (citing ECF No. 15, attach. 9 ("Respondent's Exhibit I"); ECF No. 15, attach. 10 ("Respondent's Exhibit J")).

Petitioner filed the instant § 2254 Petition for federal habeas relief on December 7, 2016, where he raised the following five grounds: (1) Petitioner's trial counsel was ineffective for failing to fully investigate Petitioner's case, including an exculpatory witness named "Pooh" who told investigators that she had seen someone besides Petitioner commit the murder; (2) the Commonwealth's Attorney failed to disclose exculpatory evidence by failing to provide the

4

identity and/or contact information of "Pooh"; (3) Petitioner's trial counsel was ineffective for failing to properly impeach Moore's trial testimony after the Commonwealth's attorney permitted Moore to present false testimony regarding Moore's plea agreement, and Petitioner's trial counsel failed to move the Court to strike Moore's testimony or instruct the jury to disregard the same; (4) Petitioner's trial counsel was ineffective for failing to object to the Commonwealth's request that the jury be instructed on the elements of second degree murder, despite the fact the Court had granted the Commonwealth's motion to enter the indictment's charge of second degree murder *nolle prosequi*, while pursuing Petitioner's conviction for first degree murder; and (5) the evidence presented at trial was insufficient to support Petitioner's convictions, in light of the dearth of physical and forensic evidence linking Petitioner to the scene, and the biased and incredible testimony of Moore, whose testimony against Petitioner was motivated by Moore's desire to receive a favorable plea agreement. ECF No. 1 at 6-20. By Motion dated January 26, 2017, Petitioner requested the Court's permission to amend his petition to include an additional claim, which challenged the indictments as invalid and thereby divested the Norfolk Circuit Court of its jurisdiction over Petitioner's prosecution. ECF No. 7. On February 10, 2017, the Court granted Petitioner's Motion, and the claim alleged in Petitioner's Amended Petition (ECF No. 7) was included for the Court's review. *See* ECF No. 10.

On March 1, 2017, the Respondent filed a Motion to Dismiss, a Rule 5 Answer, a Brief in Support of the Motion to Dismiss, and *Roseboro* Notice. ECF Nos. 13-16. Petitioner filed a Response on March 22, 2017, ECF No. 20, and a second Response on August 10, 2017, ECF No. 26. Therefore, the instant Petition and Motion to Dismiss are ripe for recommended disposition.

5

## II.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A. Exhaustion**

Before addressing the merits of a federal habeas petition, the preliminary inquiry must be whether Petitioner appropriately exhausted his claims. Section 2254 allows a prisoner held in state custody to challenge his detention on the ground that his custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner, however, must exhaust his available state remedies or demonstrate the absence or ineffectiveness of such remedies before petitioning for federal habeas relief in order to give "state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Importantly, "[t]he burden of proving that a claim is exhausted lies with the habeas petitioner." *Id.* at 618. The exhaustion requirement is satisfied if the prisoner seeks review of his claim in the highest state court with jurisdiction to consider it through either direct appeal or post-conviction proceedings, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999), and the "essential legal theories and factual allegations advanced in the federal court [are] the same as those advanced at least once to the highest state court," *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993). Here, Petitioner raised all but one of the present claims in his state habeas petition before the Supreme Court of Virginia or on direct appeal. Specifically, Claims 1, 3, and 4 were exhausted because they were presented to and considered by the Virginia Supreme Court on appeal from the trial court's dismissal of Petitioner's habeas petition. *See* ECF No. 15, attach. 7 ("Respondent's Exhibit G") at 3, 5. *See also* ECF No. 15, attach. 8 ("Respondent's Exhibit H"). Claim 5 was raised on direct appeal. ECF No. 15, attach. 2 ("Respondent's Exhibit

B") at 10-11. Additionally, as discussed in greater detail in Part II.E, *infra*, the single claim raised in the Amended Petition (ECF No. 7) was exhausted on direct appeal. ECF No. 20 at 93.

With respect to Claim 2, the Court finds that this specific assignment of error has not been presented in state court. Rather, on appeal, Petitioner raised a related, but different claim wherein Petitioner alleged the police erred by failing to obtain Pooh's identity. ECF No. 15, attach. 2 at 10-11. Here, Petitioner appears to argue that the police and/or Commonwealth's Attorney knew Pooh's true identity, but deliberately failed to disclose the same to Petitioner and Petitioner's counsel after identifying "Pooh" in the prosecution's provision of supplemental discovery on or about November 26, 2012. ECF No. 1 at 36-38. Because Claim 2 has never been presented in state court, Petitioner has defaulted on this claim, and is procedurally barred from the Court's consideration pursuant to the instant Petition. *See Teague v. Lane*, 489 U.S. 288 (1989). *See also* Virginia Code §§ 8.01-654(A)(2) (setting forth Virginia's Statute of Limitations); 8.01-654(B)(2) (successive).

Additionally, this Court notes that the Respondent concedes that with the exception of Claim 2, all of Petitioner's claims have been properly exhausted. *See* ECF No. 15 at 3. Accordingly, the undersigned **FINDS** that Petitioner has properly exhausted his state remedies with respect to Claims 1, 3, 4, and 5.

## B. Standards of Review

### 28 U.S.C. § 2254(d)

With respect to those claims that were adjudicated by the State court on their merits, habeas relief is warranted only if Petitioner can demonstrate that the adjudication of his claims by the State courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United

States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Thus, federal habeas relief is precluded, so long as "fair-minded jurists could disagree" on the correctness of the State court's decision. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA[2], § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.") (citing *Felker v. Turpin,* 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244)). In other words, "AEDPA prohibits federal habeas relief for any claim adjudicated on the merits in state court, unless one of the exceptions listed in § 2254(d) obtains." *Premo v. Moore*, 562 U.S. 115, 121 (2011).

In *Williams v. Taylor*, the Supreme Court explained that the "exceptions" encapsulated by § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S. 362, 404-05 (2000). A federal habeas court may issue the writ under the "contrary to" clause if the State court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405-06. This Court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case. *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000). *See also Woodford v. Visciotti*, 537 U.S. 19, 27 (2002) ("The federal habeas scheme leaves primary responsibility with the state courts for

---

[2] Antiterrorism and Effective Death Penalty Act of 1996

these judgments, and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). "The focus of the [unreasonable application] inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

In making this determination under Section 2254(d)(1), the Court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011) ("Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that 'resulted in' a decision that was contrary to, or 'involved' an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court."). Thus, it is this Court's obligation to focus "on the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves."[3] *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997). *See also Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (explaining that the Court independently reviews whether that decision satisfies either standard). Additionally, in undertaking such review, this Court is mindful that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

---

[3] Pursuant to § 2254(d), the federal court must look to the state court decision that was "adjudicated on the merits in State court proceedings . . . resulting in a decision." *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997). In this case, the qualifying state court decision on the merits was the Circuit Court's decision on Petitioner's state habeas petition. *See* ECF No. 1 at 15-26.

Ineffective Assistance of Counsel

Here, as in *Premo*, because there is no allegation that the State courts decided Petitioner's State habeas "differently than th[e U.S. Supreme] Court has on a set of materially indistinguishable facts," *Williams v. Taylor*, 529 U.S. 362, 413 (2000), the relevant exception is "permitting relitigation where the earlier state decision resulted from an 'unreasonable application of' clearly established federal law" and "[t]he applicable federal law consists of the rules for determining when a criminal defendant has received inadequate representation as defined in *Strickland*," *Premo v. Moore*, 562 U.S. 115, 121 (2011) (citing *Harrington v. Richter*, 562 U.S. 86, 100 (2011); 28 U.S.C. § 2254(d)(1)). *See also Strickland v. Washington*, 446 U.S. 668 (1984). Generally, to have been entitled to habeas relief in State court for ineffective assistance of counsel claims under the Sixth Amendment, Petitioner had to show both that his defense counsel provided deficient assistance, and that he was prejudiced as a result of counsel's deficiency. *Strickland v. Washington*, 446 U.S. 668, 700 (1984) (conceptualizing the inquiry as two required prongs: a deficiency prong and a prejudice prong). First, to establish deficient performance, Petitioner was required to show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688-89 (holding that there is a strong presumption that trial counsel provided reasonable professional assistance). Second, Petitioner was also required to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 687, 693-94 (holding that counsel's errors must be "so serious as to deprive the defendant of a fair trial," and that a petitioner must "show that the errors had some conceivable effect on the outcome of the proceeding").

The United States Supreme Court summarized the high bar faced by petitioners in a federal habeas proceeding where a petitioner's Sixth Amendment ineffective assistance of counsel claims were previously rejected by the state court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so . . . . The *Strickland* standard is a general one, so the range of reasonable applications is substantial. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Premo v. Moore*, 562 U.S. 115, 122–23 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009))) (internal citations omitted). *See also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("Under the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard . . . Mirzayance's ineffective-assistance claim fails.") (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (*per curiam*)). With that standard in mind, the undersigned now turns to the merits of the Petition, beginning with Petitioner's grounds based upon alleged ineffective assistance of counsel: Claims 1, 3, and 4.

## C. Facts and Findings of Law

### Claim 1

In Claim 1, Petitioner alleges that his Trial Counsel was ineffective for failing to investigate, prepare, and present exculpatory evidence. Specifically, Petitioner recounts that on or about November 26, 2012[4], the prosecution provided Trial Counsel with additional discovery

---

[4] Although Petitioner refers to this date as "November 23, 2012," *see* ECF No. 1 at 34, the Court finds that this date is based on the Certificate of Service date provided by the Commonwealth's submission, *see* ECF No. 15, attach. 11

evidence consisting of unconfirmed street stories. *See* ECF No. 15, attach. 11 ("Respondent's Exhibit K"). Among these unconfirmed street stories were the allegations that two other different people had shot the victim, which the police investigated and dismissed, as well as the allegation that a woman identified only as "Pooh" told police that "Lil Greg" had shot the victim. Upon investigation, police determined "Lil Greg" to be Gregory Howard, who was inside the party at the time of the shooting. ECF No. 15, attach. 11 ("Respondent's Exhibit K") at 1-2. Petitioner alleges that Trial Counsel was ineffective for failing to investigate this potentially exculpatory evidence, despite being specifically granted a continuance to do so. *See* ECF No. 1 at 34; ECF No. 15, attach. 12 ("Respondent's Exhibit L") at 2. This claim was presented in Petitioner's State court habeas petition, denied by the Norfolk Circuit Court, and the Supreme Court of Virginia refused an appeal of the same. *See* ECF No. 15, attach. 8. ("Respondent's Exhibit H").

Here, the Supreme Court of Virginia was not unreasonable in finding that Petitioner's claim (Claim 1) was without merit. *See* ECF No. 15, attach. 6 ("Respondent's Exhibit F"). The State Court determined that Petitioner failed to satisfy *Strickland*'s demanding standard with respect to Claim 1.[5] As an initial matter, the Circuit Court found that Petitioner "failed to proffer

---

at 3. However, Petitioner's Trial Counsel and the Respondent both use November 26, 2012 as the date of the supplemental discovery response. *See* ECF No. 15 at 7; ECF No. 15, attach. 12 ("Respondent's Exhibit L") at 2. In the interest of clarity, the Court will use November 26, 2012 as the date, but note that practically, the difference of the dates yield no appreciable distinction to the issues before the Court.

[5] The Court notes that the Virginia Supreme Court issued a short form order refusing the appeal of Petitioner's state petition for a writ of habeas corpus. *See* ECF No. 15, attach. 8 ("Respondent's Exhibit H"). Accordingly, and pursuant to mandatory case law, the Court will look to the decision of the Norfolk Circuit Court (ECF No. 15, attach. 6 "Respondent's Exhibit F")/ECF No. 1 at 15-25) for the State court's findings of facts and rulings. *See Bennett v. Angelone*, 92 F.3d 1336, 1343 (4th Cir. 1996) ("Furthermore, where several of a state's courts have ruled on a claim, we look to the last state court decision in the case to determine whether it did, in fact, rely on such a state procedural bar.") (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). *See also Grueninger v. Dir., Virginia Dep't of Corr.*, 813 F.3d 517, 525 (4th Cir. 2016) ("In applying § 2254(d) in this case, we 'look through' the Supreme Court of Virginia's summary refusal to hear Grueninger's appeal and evaluate the Circuit Court's reasoned decision on Grueninger's claim.").

an affidavit regarding testimony any witness would have given that would have indicated someone else shot the victim" and that "[h]is failure to do so [was] fatal to his claim."  ECF No. 15, attach. 6 at 4 (citing *Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("However, an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced.") (quoting *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990), *cert. denied*, 499 U.S. 982 (1991));  *Sigmon v. Dir. of Dep't of Corr.*, 285 Va. 526, 535, 739 S.E.2d 905, 910 (2013) (where a petitioner "failed to provide affidavits or other evidence to show [for example,] what additional trial strategies and defenses were available if counsel had met with him more often and engaged in additional trial preparation; what additional investigation of the charges would have revealed," the petitioner failed to establish *Strickland*'s prejudice prong, i.e., that the outcome would have been different but for counsel's errors); *Muhammad v. Warden of Sussex I State Prison*, 274 Va. 3, 19, 646 S.E.2d 182, 195 (2007) ("Petitioner does not articulate a factual basis to support this claim and does not identify with specificity any act or omission of counsel which was objectively unreasonable. Furthermore, petitioner does not attempt to demonstrate how these failures were prejudicial."); *Virginia Dep't of Corr. v. Clark*, 227 Va. 525, 537, 318 S.E.2d 399, 405 (1984) ("Therefore, even if Clark's attorneys should have made further investigation into Clark's mental and emotional condition, their failure to do so, under the circumstances of this case, did not result in any prejudice to Clark.")).

Moreover, the Circuit Court found the affidavit from Petitioner's Trial Counsel on the matter to be credible.  ECF No. 15, attach. 6 at 5.  Therein, Trial Counsel stated that although he did request a continuance given the timing of the supplemental discovery (eight days before the scheduled final pretrial conference), upon reviewing the information, Trial Counsel determined

(and explained the same to Petitioner) that Pooh's statements amounted to inadmissible hearsay, and notwithstanding their inadmissibility, the lack of contact information for Pooh made it impossible to track Pooh down. ECF No. 15, attach. 12 at 2, ¶¶ 4-5. *See also Griffin v. Warden, Maryland Corr. Adjustment Ctr.*, 970 F.2d 1355, 1358 (4th Cir. 1992) ("An attorney's failure to present available exculpatory evidence is ordinarily deficient, 'unless some cogent tactical or other consideration justified it.'") (quoting *Washington v. Murray*, 952 F.2d 1472, 1476 (4th Cir. 1991)).

Accordingly, Petitioner failed to demonstrate that Trial Counsel's performance was deficient and that he was prejudiced by Trial Counsel's alleged error, therefore, the Supreme Court of Virginia's decision was not unreasonable and the undersigned **RECOMMENDS** that Claim 1 be **DISMISSED**.

Claim 3

The undersigned finds that the Supreme Court of Virginia was not unreasonable in finding that Petitioner failed to satisfy *Strickland's* demanding standard with respect to Claim 3. Concerning Claim 3, Petitioner argued that his Trial Counsel was ineffective for failing to challenge the false testimony of Moore, a witness whose testimony (and credibility) was central to the Commonwealth's case. ECF No. 1 at 39-40. Specifically, Petitioner avers that the Commonwealth knowingly permitted Moore to testify falsely about the terms of his plea agreement, and Trial Counsel failed to properly impeach Moore on cross examination, and also failed to move the Court to instruct the jury to disregard Moore's testimony in its entirety. It appears that Petitioner takes issue with Moore's testimony on direct examination that there was no specific plea agreement and that he had not been promised anything for his testimony. *See* ECF No. 15 at 14. According to Petitioner, the failure to do so was prejudicial because "Moore

14

was the central witness in the Commonwealth's case and the determination of guilt or innocence hinged on the juries [sic] perceived credibility of Mr. Moore." ECF No. 1 at 40.  The Supreme Court of Virginia was reasonable in concluding that Petitioner's Trial Counsel's performance was not deficient, and did not constitute a violation of *Naupe v. Illinois*, 260 U.S. 264 (1959). ECF No. 15, attach. 6 at 8-10.   *See Tawalbeh v. United States*, No. 7:00CV00858, 2001 WL 1274562, at *4 (W.D. Va. Oct. 19, 2001) ("It would have offended due process if the government had knowingly used perjured testimony, whether the government solicited that testimony or simply allowed it to pass uncorrected.") (citing *Naupe v. Illinois*, 360 U.S. 264, 269 (1959)).

As an initial matter, the State court appropriately found that Petitioner's claim is belied by the record.  ECF No. 15, attach. 6 at 8-10.  First, Moore did not testify "falsely" because Moore testified, consistent with the terms of the Plea Agreement that, the "Plea Agreement did not provide for a specific sentence to be imposed on Moore." ECF No. 15, attach. 12 at 2, ¶ 6. Additionally, on cross-examination, Moore testified that he had recently pleaded guilty to two felonies and that in return for his guilty pleas, and testimony against Petitioner, "the Commonwealth had agreed to drop 'some very serious charges.'" ECF No. 15 at 14 (quoting Tr. at 506-07).

Even assuming *arguendo*, that Moore's testimony was "false," Trial Counsel specifically exposed any "falsity" when he cross-examined Moore about the terms of the Plea Agreement, and impeached Moore by demonstrating not only his potential bias and self-preserving motive to lie (based on the fact that the Plea Agreement was struck in an effort for Moore to avoid "some very serious charges"), but also with Moore's felony convictions which provided a separate, statutory basis to impeach his credibility.   Trial Counsel also impeached Moore's specific

15

statements at trial by showing that contrary to his testimony on direct examination, the Plea Agreement was a specific agreement (although not with respect to the specific sentence beyond the five year minimum Moore was required to serve).   ECF No. 15, attach. 6 at 9 (citing Tr. at 506-07).   Trial Counsel's impeachment of Moore's testimony eliminated any potential prejudice suffered by Petitioner (via the Commonwealth's alleged presentation of "false testimony"), and Petitioner has failed to allege how Trial Counsel's failure to ask the Court to instruct the jury to disregard Moore's testimony was material, or otherwise would have altered the outcome.   *See Lawlor v. Davis*, 288 Va. 223, 224, 764 S.E.2d 265, 270 (2014)   ("Furthermore, this Court has previously held that, 'to find that a violation of *Napue* occurred . . . we must determine first that the testimony [at issue] was false, second that the prosecution knew of the falsity, and finally that the falsity affected the jury's judgment.") (quoting *Teleguz v. Commonwealth*, 273 Va. 458, 492, 643 S.E.2d 708, 729 (2007)).   *See also Lovitt v. True*, 403 F.3d 171, 186 (4th Cir. 2005) (finding no material exculpatory evidence was suppressed by the prosecution where a government witness had previously cooperated in exchange for a reduced sentence, the defendant's attorneys brought this out on cross-examination, and the witness admitted as much to the jury, and the defendant's attorneys impeached the witness's credibility by introducing his multiple felony convictions into evidence and remarking "it is unclear what more [the defendant's] attorneys could have done to undermine [the witness's] credibility") (citing *United States v. Cole*, 293 F.3d 153, 163 (4th Cir. 2002) (suppression of impeachment evidence is not material when ample information exists to effectively cross-examine witness)); *Lawlor v. Zook,* No. 2:15CV113, 2017 WL 2603521, at *20 (E.D. Va. June 15, 2017) ("In short, the legal standard for establishing either a *Napue* claim or a *Brady* claim includes a materiality requirement because the ultimate concern is whether the defendant received 'a fair trial, understood as a trial resulting in a verdict

16

worthy of confidence.'") (quoting *Walker v. Kelly*, 589 F.3d 127, 142 (4th Cir. 2009) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995))).

By asserting this claim, Petitioner essentially suggests that Trial Counsel should have asked the Court to invade the province of the jury by dictating the weight and credibility that should be assigned to Moore's testimony. An attorney's performance is not deficient when he declines to erroneously pursue relief for which there is no rational legal basis. *See e.g., Grueninger v. Dir., Virginia Dep't of Corr.*, 813 F.3d 517, 529 (4th Cir. 2016) (observing that "[a] strategic judgment that 'baseless motions' should be avoided . . . may be well-founded") (internal citations omitted); *United States v. Shippy*, 471 F. App'x 172, 181 (4th Cir. 2012) ("deferring as we must to the jury's role in judging the weight and credibility of the testimony"); *United States v. Melvin*, 73 F.3d 359 (4th Cir. 1996) (holding that "the weight and credibility of Jackson's testimony is exclusively a jury question not subject to review on appeal") (citing *United States v. Saunders*, 886 F.2d 56, 60 (4th Cir. 1989)); *Turner v. Commonwealth*, No. 0067-16-1, 2017 WL 83642, at *3 (Va. Ct. App. Jan. 10, 2017) ("Determining the credibility of the witnesses and the weight afforded their testimony are matters left to the fact finder, who has the ability to hear and see them as they testify.") (citing *Commonwealth v. Taylor*, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998); *Swanson v. Commonwealth*, 8 Va. App. 376, 378–79, 382 S.E.2d 258, 259 (1989)).

Additionally, Petitioner fails to specifically identify which argument(s) Trial Counsel should have asserted as the basis for asking the Court to exclude Moore's testimony or instructing the jury to disregard Moore's testimony. *See Sigmon v. Dir. of Dep't of Corr.*, 285 Va. 526, 535, 739 S.E.2d 905, 910 (2013) (where a petitioner "failed to provide affidavits or other evidence to show [for example,] what additional trial strategies and defenses were available

if counsel had met with him more often and engaged in additional trial preparation," the petitioner failed to establish *Strickland*'s prejudice prong, i.e., that the outcome would have been different but for counsel's errors). *See also Muhammad v. Warden of Sussex I State Prison*, 274 Va. 3, 19, 646 S.E.2d 182, 195 (2007) ("Petitioner does not articulate a factual basis to support this claim and does not identify with specificity any act or omission of counsel which was objectively unreasonable. Furthermore, petitioner does not attempt to demonstrate how these failures were prejudicial."). Here, Petitioner does not, and cannot, cite to any case law or statutory rule in support of the proposition that merely demonstrating that a lay witness is a liar, or unworthy of belief is a ground for exclusion. For example, there is no evidence that Moore lacked personal knowledge of the events discussed by his testimony. *See Bradley v. Commonwealth*, No. 0260-93-3, 1994 WL 188467, at *2 (Va. Ct. App. May 10, 1994) (rejecting an assignment of error based on object to a witness's lack of personal knowledge because "[t]he weight and credibility to be given to Ewing's testimony was a matter for the jury to determine. Accordingly, it was not error for the trial court to overrule Bradley's objection and motion to strike Ewing's evidence."). Therefore, the Supreme Court of Virginia's decision was not unreasonable and the undersigned **RECOMMENDS** that Claim 3 be **DISMISSED.**

<u>Claim 4</u>

Additionally, the Supreme Court of Virginia was not unreasonable in finding that Petitioner failed to satisfy *Strickland's* demanding standard with respect to Claim 4.  See ECF No. 15, attach. 6 at 5-8.  In Claim 4, Petitioner argues that his Trial Counsel was ineffective for failing to object to the jury instruction on first degree murder, which included an instruction regarding the lesser included offense of second degree murder. ECF No. 1 at 40-41. According to Petitioner, once the Norfolk Circuit Court granted the prosecution's motion to enter a *nolle*

18

*prosequi* as to the indictment's charge of second degree murder, Petitioner could not be convicted of second degree murder because only the charge of first degree murder remained. ECF No. 1 at 40. Petitioner contends that the jury's acquittal of Petitioner as to first degree murder "clearly substantiates" that Petitioner would have been acquitted entirely but for the instruction on second degree murder. ECF No. 1 at 41.

As an initial matter, and contrary to Petitioner's apparent assertion, the undersigned finds that the removal of the formal charge of second degree murder from the jury's purview as an official count is not tantamount to placing consideration thereof beyond the jury's consideration. Rather, this procedural mechanism enabled the jury to acquit Petitioner on first degree murder, and convict him of the lesser-included (and less serious/less penalized) charge of second degree murder. *See Blankenship v. Commonwealth.*, 193 Va. 587, 593, 70 S.E.2d 335, 338 (1952) ("The jury did not have to believe either the theory of the Commonwealth or that of the defendant, entirely. They had the right to accept such parts of the evidence as they believed to be true. Under our statutes, they have a rather [sic] wide latitude in applying the law to the facts and in fixing the degree of guilt of one convicted of crime. If, for some reason satisfactory to them, they mistakenly believe that an accused is not guilty of the higher grade of offense charged, and find him guilty of a lesser grade, ***it is difficult to see how the mitigation is harmful to the accused***.") (emphasis added).

To the extent that Petitioner attempts to satisfy *Strickland*'s prejudice prong by concluding that the jury's acquittal of Petitioner as to first degree murder "clearly substantiates" that Petitioner would have been acquitted entirely but for the instruction on second degree murder, such attempts are unavailing. ECF No. 1 at 41. *See Belton v. Commonwealth*, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958) ("The jury is not required to accept, in *toto*, either the theory of the

19

Commonwealth or that of an accused. They have the right to reject that part of the evidence believed by them to be untrue and to accept that found by them to be true. In so doing, they have broad discretion in applying the law to the facts and in fixing the degree of guilt, if any, of a person charged with a crime.") (citing *Blankenship v. Commonwealth*, 193 Va. 587, 587, 70 S.E.2d 335 (1952); *Zirkle v. Commonwealth*, 189 Va. 862, 862, 55 S.E.2d 24 (1949)). Here, as the State court observed, "the jury disbelieved [Petitioner's] claims of innocence and convicted him of second-degree murder." ECF No. 15, attach. 6 at 8 (quoting *Blankenship v. Commonwealth*, 193 Va. 587, 593, 70 S.E.2d 335, 338 (1952) ("'While there is some conflict on the question, the rule supported by the weight of authority seems to be that if the evidence demands or warrants a conviction of a higher degree of homicide than that found by the verdict, and there is either no evidence in support of acquittal or, if there is, it is not sufficient to warrant or require acquittal, or is disbelieved by the jury, the defendant is not entitled to a reversal or a new trial on the ground that the court instructed on the lower degree of homicide, as to which there was no evidence, the theory being that *he is not prejudiced thereby* and cannot complain.")) (citations omitted) (emphasis added). *See also United States v. Shippy*, 471 F. App'x 172, 181 (4th Cir. 2012) ("While Shippy denied that he was a participant in those calls, and he offered the jury innocent explanations for his intermittent presence at and around the Foster residence, the jury made those relevant findings against him, as it was authorized to do.").

Additionally, the Court notes that the eyewitness evidence against Petitioner was abundant to say the least, and further corroborated, in part, *by Petitioner's own trial testimony* (offered against Trial Counsel's advice), that placed him at the party, and in the Escalade with three of the eyewitnesses. *See* ECF No 15 at 19 (citing Tr. at 576, 592-94). *See also Clozza v. Murray*, 913 F.2d 1092, 1100–01 (4th Cir. 1990) ("According to *Strickland*, there must be a

20

'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' We note once again that the evidence against Clozza was overpowering. Defense counsel was faced with confessions to the crimes by his client as well as evidence linking Clozza to the crimes. Abundant support for the conviction found in the record reduces the likelihood that error affected the verdict which was returned.") (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)) (internal citations omitted).

Additionally, *Strickland* and its progeny make clear that reviewing courts should be reluctant to second guess trial lawyer's deliberate, reasonable tactics. *Clozza v. Murray*, 913 F.2d 1092, 1097 (4th Cir. 1990) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). Here, Trial Counsel specifically addressed the issue of the second degree murder instruction in his Affidavit, stating that based on his experience representing nearly two hundred defendants accused of murder,

> Having lesser included offenses in jury instructions is almost always considered to be in the best interest of the defendant; such was the case here. By its verdict, the jury determined that [Petitioner] shot and killed the victim in this case. By allowing the jury to consider the lesser-included offense of second degree murder, [Petitioner's] conviction of that lesser-included offense caused [Petitioner's] sentence range to be substantially less than would have been the case with a conviction for first degree murder.

ECF No. 15, attach. 12 at 2-3, ¶ 7. Unlike in other cases where the failure to object "resulted from inattention," it is clear that when Trial Counsel refrained from objecting to the second degree murder instruction, he "made a deliberate choice which resulted from a 'reasoned strategic judgment.'" *Lovitt v. True*, 403 F.3d 171, 181 (4th Cir. 2005) (observing that "[w]hile the lawyers in *Wiggins* made a decision which 'resulted from inattention,' the lawyers in Lovitt's case made a deliberate choice which resulted from a 'reasoned strategic judgment'") (quoting *Wiggins v. Smith*, 539 U.S. 510, 526 (2003)). Therefore, the Supreme Court of Virginia's

decision was not unreasonable and the undersigned **RECOMMENDS** that Claim 4 be **DISMISSED.**

Claim 5

In Claim 5, Petitioner argues that "the trier of fact in this case violated [t]he Due Process clause of the Fourteenth Amendment to the United States Constitution when they [sic] found him guilty . . . without sufficient evidence of guilt beyond a reasonable doubt." ECF No. 1 at 41. It is well-established that [t]he relevant question in this inquiry "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hughes,* 716 F.2d 234, 239 (4th Cir. 1983) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)) (emphasis in original).  In rejecting this claim, the Virginia Court of Appeals ruled that the evidence was sufficient, summarizing the testimony of multiple witnesses, and observing that "from the evidence presented, the jury could conclude beyond a reasonable doubt that [Petitioner] committed the charged offenses." ECF No. 15, attach. 1 ("Respondent's Exhibit A") at 3.  With respect to Moore's testimony, the Virginia Court of Appeals concluded that notwithstanding the multiple assaults to his credibility and examples of impeachment thereto, "[t]he jury accepted Moore's eyewitness testimony that [Petitioner] shot the victim." ECF No. 15, attach. 1 at 2-3 (noting that the credibility of the witnesses is within the exclusive province of the jury) (citing *Sandoval v. Commonwealth,* 20 Va. App. 133, 138, 455 S.E.2d 730,732 (1995) ("The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."); *Swanson v. Commonwealth,* 8 Va. App. 376, 379, 382 S.E.2d 258, 259 (1989) ("So long as a witness deposes as to facts which, if true, are sufficient to maintain their verdict, then the fact that the

22

witness' credit is impeached by contradictory statements affects only the witness' credibility; contradictory statements by a witness go not to competency but to the weight and sufficiency of the testimony. *If the trier of the facts sees fit to base the verdict upon that testimony there can be no relief in the appellate court.*") (citing *Simpson v. Commonwealth*, 199 Va. 549, 557–58, 100 S.E.2d 701, 707 (1957)) (emphasis added). *See e.g., Swinson v. Dir., Dep't of Corr.*, No. 3:14CV100, 2015 WL 1185951, at *6 (E.D. Va. Mar. 13, 2015) (citing *Peterson v. Commonwealth*, 225 Va. 289, 295, 302 S.E.2d 520, 524 (1983) (stating that the credibility of witnesses and the weight to be given identification testimony is a matter for the jury)).

Additionally, the Court of Appeals observed that "other evidence was presented, including Brown's testimony, that supported Moore's version of the incident." ECF No. 15, attach. 1 at 3. Therefore, the State court's decision that sufficient evidence existed to support Petitioner's convictions was not unreasonable, and accordingly, the undersigned **RECOMMENDS** that Claim 5 be **DISMISSED**.

    Claim 2

As the undersigned previously observed in Part II.A, *supra*, Petitioner raises Claim 2 for the first time in the instant Petition and is therefore procedurally barred from raising the same. Notwithstanding this determination, the Court finds that the claim is meritless. First, and as noted by the Respondent, there is no evidence that the police and/or Commonwealth's Attorney knew the true identity of "Pooh" or otherwise had means of contacting her. ECF No. 15 at 20. Additionally, and as the Circuit Court held, even if the police and/or the Commonwealth's Attorney actually knew Pooh's identity, yet simply failed to disclose the same to Petitioner and his Trial Counsel, there was no requirement that the prosecution provide such information to Petitioner and Trial Counsel. On direct appeal, in denying Petitioner's previous, related claim

regarding the police's alleged failure to thoroughly investigate Pooh's identity, the Court of Appeals noted that "after receiving the supplemental discovery, [Petitioner] did not request further information from the Commonwealth regarding the identity of Pooh." ECF No. 15, attach. 1 ("Respondent's Exhibit A") at 3-4. Fourth Circuit case law also underscores the State court's determination that no *Brady* violation occurred. *See Lovitt v. True*, 403 F.3d 171, 184 (4th Cir. 2005) (reiterating that "where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine.") (quoting *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990)). The undersigned has already addressed any alleged deficiencies of Trial Counsel regarding his failure to pursue "Pooh" or her potentially exculpatory information. Therefore, even if Claim 2 is not procedurally barred, the undersigned **RECOMMENDS** dismissal of the same.

### D. Petitioner's Motion to Appoint Counsel (ECF No. 21)

In addition to filing his *pro se* Petition and Amended Petition, Petitioner also moved the Court (for the second time) to appoint him counsel. ECF No. 21. The Court finds, as it did when denying Petitioner's previous request for the same, there is no constitutional right to counsel in non-capital federal habeas corpus proceedings. *See McCleskey v. Zanl*, 499 U.S. 467, 495 (1991) (citation omitted); *Pennsylvania V. Finley*, 481 U.S. 551, 555 (1987) (citations omitted). Although the Court may exercise its discretion and appoint counsel to represent an indigent party in civil litigation pursuant to 28 U.S.C. § 1915(e)(1), *see Bowman v. White*, 388 F.2d 756, 761 (4th Cir. 1968) (citations omitted), Petitioner, here, has again failed to allege any "exceptional circumstances" warranting the appointment of counsel in this case, *see Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975) (citation omitted); *Griffin v. Virginia*, 606 F. Supp.

24

941, 943 (E.D. Va. 1985) (citation omitted). Accordingly, Petitioner's renewed Motion to Appoint Counsel (ECF No. 21) is **DENIED**.

**E. Petitioner's Motion for Default Judgment (ECF No. 25)**

On August 2, 2017, Petitioner filed a Motion for Default Judgment. ECF No. 25. Therein, Petitioner requests that the Court enter a default judgment against the Respondent for his failure to address Petitioner's additional ground for habeas relief, as the Respondent was ordered to do by the Court on or about February 2, 2017. ECF No. 10 at 1-2 ("The Respondent is therefore ORDERED to file within thirty (30) days from the date of this Order an answer to the petition and amended petition conforming to the requirements of Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, together with the attachments specified in Rule 5. Without limiting the answer, Respondent shall advise whether the Petitioner's claim is timely or whether there is any basis to excuse an untimely petition, and whether petitioner has exhausted his state court remedies with respect to the issues raised in the federal petition."). In the Amended Petition (ECF No. 7), Petitioner added an additional claim to his pending request for habeas relief, alleging that the Norfolk Circuit Court lacked jurisdiction to prosecute Petitioner for his convictions, and also violated Petitioner's rights under the Due Process Clause because the indictments were not marked a true bill, were not signed by the grand jury foreperson, and were not filed in open court. On February 4, 2016, Petitioner filed a Motion with the Norfolk Circuit Court alleging the same grounds in a self-titled "Motion to Vacate Void Judgment." ECF No. 20 at 56. On February 19, 2016, the Commonwealth of Virginia responded to Petitioner's Motion to Vacate by providing certified copies of the subject indictments returned by the grand jury, which were marked "True Bill," and signed by the foreperson. ECF No. 20 at 56-59.

Petitioner appealed the Circuit Court's denial of his Motion to Vacate. ECF No. 20 at 61-73. The Commonwealth also responded and argued that Petitioner's Motion was properly denied because the record established that all the jurisdictional requirements of the indictments were satisfied, and because Petitioner was procedurally barred from raising the claim because his time for doing so had long expired. ECF No. 20 at 44-89. Additionally, the Commonwealth included a copy of the Norfolk Circuit Court's June 6, 2012 Order which reflected that such indictments were returned "in open court." ECF No. 20 at 87. On January 10, 2017, the Supreme Court of Virginia refused Petitioner's appeal, stating "[u]pon review of the record in this case and consideration of the argument in support of and in opposition to the granting of an appeal, the Court is of the opinion there is no reversible error in the judgment complained of. Accordingly, the Court refuses the petition for appeal." ECF No. 20 at 93. The Respondent apparently acknowledged this additional claim, *see* ECF No. 15 at 2, but did not substantively address the merits thereof in his Rule 5 Response to the Petition for Writ of Habeas Corpus and attendant Motion to Dismiss. *See* ECF Nos. 13, 15. Nonetheless, Respondent answered this allegation when he specifically "denie[d] each and every allegation of the petition not expressly admitted." ECF No. 15 at 21, ¶ 42. Consequently, Petitioner is not entitled to default judgment. Moreover, Petitioner is also not entitled to relief as to this claim because the ground is meritless. The record, as supplemented by Petitioner through the inclusion of the Commonwealth's briefing materials demonstrates that the Supreme Court properly refused Petitioner's appeal on this ground, and that the Norfolk Circuit Court properly denied the same. *See Reed v. Commonwealth*, 281 Va. 471, 480, 706 S.E.2d 854, 859 (2011) ("Although the written charges did not contain the signature of the grand jury foreman, they had been 'returned in open court' by the grand jury as true bills and, thus, became valid indictments permitting the trial court to order

26

the arrest of Reed and bring him to trial on those indictments."). The Commonwealth's submissions in support of its opposition to Petitioner's appeal clearly demonstrates that the indictments at issue were properly signed, designated as "True Bills," and filed in open court. *See Hanson v. Smyth*, 183 Va. 384, 391, 32 S.E.2d 142, 145 (1944) ("Moreover, the endorsement on the indictments, 'A true bill,' signed by the foreman, sufficiently identified them as being the same indictments which the record book shows were found by the grand jury against the accused. . . . A reference to the indictments thus identified shows that each charged the petitioner with the commission of [felonies – felonious killing of the victim and the use or attempted use of a firearm while committing a felony].") (internal citation omitted). At no time in the course of Petitioner's prosecution was the Norfolk Circuit Court ever divested of jurisdiction over the same. Additionally, Petitioner's failure to raise this (albeit meritless) issue prior to January 26, 2017 renders it irreparably untimely pursuant to Virginia Supreme Court Rule 1:1, which provides in pertinent part, that "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." Va. Sup. Ct. R. 1:1.

Accordingly, it cannot be said that this State court determination is "contrary to" or "an unreasonable application of federal law is based upon an independent review of each standard. *See Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). *See also Cullen v. Pinholster*, 563 U.S. 170 (2011) (reiterating that when reviewing the state court's findings, the federal court is limited to the record before the state court at the time of the decision. Therefore, the undersigned **RECOMMENDS** dismissal of the single claim alleged in the Amended Petition (ECF No. 7).

### III.   RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 14, be **GRANTED**, and the Petition, ECF No. 1, and Amended Petition, ECF No. 7, be **DENIED** and **DISMISSED WITH PREJUDICE.**

### IV.   REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Gallop is notified that:

1.  Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a).  A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2.  A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made.  The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner and to counsel for the Respondent.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
January 31, 2018